UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

AMY LANDERS and DAN LANDERS, )
Co-Guardians of the Person and the Estate of )
MAKAYLA JEAN PARKER LANDERS, )
              Plaintiffs, )
               )
          v. ) Civil Action No 2:21-cv-66
               )
VERMONT PERMANENCY INITIATIVE, INC. )
d/b/a VPI, VPI SOUTH, VPI BENNINGTON, )
THE VERMONT SCHOOL FOR GIRLS, )
THE NEW ENGLAND SCHOOL FOR GIRLS and )
THE BENNINGTON SCHOOL, )
              Defendant. )

# COMPLAINT
# WITH
# DEMAND FOR TRIAL BY JURY

### The Parties

1. Amy Landers and Dan Landers are husband and wife, are residents of New Hampshire, and by virtue of the order of the Judicial Branch of the State of New Hampshire (NH Circuit Court, 6th Circuit), are the guardians of the person and the estate of Makayla Jean Parker Landers, also a resident of New Hampshire.

2. Vermont Permanency Initiative, Inc. is organized and exits under the laws of Vermont with its principal place of business in Bennington, Vermont and does business as Vermont Permanency Initiative, VPI, VPI South, VPI Bennington, the New England School for Girls and the Bennington School.

Plante &
Hanley, P.C.

P0180845.1                  Page 1 of 8

## Jurisdiction and Venue
## 28 U.S.C. § 1332 and 28 U.S.C. § 1391 *et seq*.

3. Because the amount in controversy exceeds seventy-five thousand dollars ($75,000) and there is complete diversity of citizenship between the plaintiffs and the defendant, this court has subject matter jurisdiction.

4. This court is the proper venue because the actions and omissions which give rise to the plaintiffs' claims took place in Vermont and caused damage to the plaintiffs' ward in Vermont.

## The Facts

5. Makayla Jean Parker Landers (Makayla) was born on March 29, 2000.

6. Because Makayla's birth mother chronically abused at least one substance, Makayla was addicted to at least one substance at the time of her birth.

7. Within months of her birth, child protection authorities in New Hampshire removed Makayla from her birth mother's care and custody and placed her with a foster mother.

8. Shortly thereafter, Makayla's foster mother adopted Makayla.

9. Not long thereafter, Makayla's first adoptive mother was diagnosed with cancer.

10. Makayla's first adoptive mother died from cancer.

11. Not long thereafter, Mr. and Ms. Landers adopted Makayla.

12. Very shortly thereafter, Makayla was diagnosed with cancer and was said to have little chance of survival.

13. After a very difficult and long course of treatments at medical institutions in New

Plante &
Hanley, P.C.

Hampshire and Massachusetts, Makayla survived, but almost certainly sustained permanent injuries as a result of the treatments that enabled her to survive.

14. Makayla has significant and chronic mental health problems.

15. Makyala has significant cognitive impairments; she functions at the level of a child in the fifth or sixth grade.

16. Makayla's permanent impairments are such that the New Hampshire Probate Court has concluded that she is unable to:

- Travel or decide where to live;

- Refuse or consent to medical or other professional care, counseling, treatment or service, including the right to be admitted or discharged from any hospital or other medical institution;

- Marry or divorce;

- Make a will or waive the provisions of a will;

- Hold or obtain a motor vehicle operator's license;

- Have access to, grant release of, withhold, deny, or refuse authorization for the guardians of her person to obtain access to and release her confidential records and papers insofar as the same may be reasonably needed by the guardians of the person to ensure that Makayla's mental, emotional and physical health concerns are properly addressed and treated;

- Possess or manage real or personal property or income from any source;

- Make gifts;

Plante &
Hanley, P.C.

- Lend or borrow money;
- Pay or collect debts;
- Manage or run a business;
- Convey or hold property;
- Continue to act as a member of a partnership;
- Cancel, reject, or oppose any authority or power of the guardians of the estate;
- Make contracts or grant powers of attorney or other authorizations;
- Make decisions concerning educational matters and training; or
- Initiate, defend or settle lawsuits.

17. At or about age 13, Makayla began engaging in self-harm, made repeated references to suicide and engaged in repeated acts sometimes said to be attempts at suicide.

18. In approximately 2014, Mr. and Ms. Landers placed Makayla at a residential treatment facility they knew as The Bennington School.

19. The facility is owned and operated by Vermont Permanency Initiative, Inc.

20. Mr. and Ms. Landers relied on representations by the defendant that it had the capacity to provide individualized, comprehensive services to children and adolescents who suffer from symptoms that often present as self-harm, depression, anxiety and suicidality.

21. Mr. and Ms. Landers relied on the defendant's assertion that girls like Makayla deserve a safe and secure environment where they can find hope and healing, and Makayla would be in that type of environment at the defendant's facility.

Plante &
Hanley, P.C.

P0180845.1

22. Mr. and Ms. Landers placed Makayla at the defendant's residential treatment facility in reliance on representations by the defendant that Makayla would receive individualized educational services, mental health care, protection from self-harm and protection from harm caused by others.

23. On or about June 29, 2015, an employee or agent of the defendant's residential treatment facility physically restrained Makayla.

24. Immediately after the physical restraint, Makayla complained that her right leg was injured.

25. Employees of the defendant's residential treatment facility gave Makayla an over-the-counter medication.

26. On or about June 30, 2015, employees of the defendant's residential treatment either encouraged or made Makayla walk on her injured right leg.

27. Eventually, employees of the defendant's residential treatment facility took Makayla to the Southwestern Vermont Medical Center.

28. Physicians at that hospital concluded that Makayla's right femur was fractured during the physical restraint.

29. On or about June 30, 2015, Makayla underwent an emergency open reduction and internal fixation of her fractured right femur at Southwestern Vermont Medical Center.

30. When the surgery done at Southwestern Vermont Medical Center failed, Makayla was treated by physicians at Concord Orthopedics.

31. On or about July 22, 2015, surgeons associated with Concord Orthopedics, in the course of surgery at Concord [New Hampshire] Hospital, inserted a metal rod to

Plante & Hanley, P.C.

stabilize Makayla's fractured right femur and to replace the hardware inserted at Southwestern Vermont Medical Center.

32. On or about March 6, 2017, Makayla underwent what was described as "right painful hardware removal femur" by surgeons associated with Concord Orthopedics at Concord Hospital.

33. Makayla continues to suffer from, and will continue to suffer from, the physical effects of the fracture of her femur.

34. Makayla continues to experience pain and suffering, and will continue to experience pain and suffering, as the direct and proximate result of the events that took place at the defendant's residential treatment facility.

35. Makayla continues to suffer, and will suffer in the future, from the psychological emotional consequences of the events at the defendant's residential treatment facility.

### COUNT I
### Negligence

36. The actions and inactions of the employees of the defendant's residential treatment facility were unreasonable and not of the type or nature provided similarly situated persons employed by residential treatment facilities for persons like Makayla.

37. These deviations from ordinary care were a substantial factor in Makayla's injuries.

38. But for these deviations from ordinary care, Makayla's injuries would not have been sustained.

### COUNT II
### Medical Negligence

39. Mr. and Ms. Landers restate paragraphs 1 - 35.

Plante &
Hanley, P.C.

P0180845.1                                      Page 6 of 8

40. While acting within the scope of their employment, agents and employees of the defendant deviated from the standard of care for similarly situated health care professionals during their care and treatment of Makayla.

41. These deviations from the standard of care were a substantial factor in Makayla's injuries.

42. But for these deviations from the standard of care, Makayla's injuries would not have been sustained.

### COUNT III
### Violation of Vermont's Consumer Protection Act

43. Mr. and Ms. Landers restate paragraphs 1- 35.

44. The services provided to Makayla by the defendant are "services" as that term is defined in Vermont's Consumer Protection Act, 9 V. S. A. § 2451, *et seq*.

45. The services provided to Makayla by the defendant are subject to the Consumer Protection Act.

46. The services provided by the defendant to Makayla were not provided in the manner or in the nature of the defendant's advertisements or offers.

47. The defendant's action and inactions violated the Consumer Protection Act.

48. As a proximate result of the defendant's violation of Consumer Protection Act, Makayla has suffered damages and the plaintiffs are entitled recover all relief allowed under the Act, including compensatory damages, treble damages, punitive damages, costs and attorneys fees.

**WHEREFORE**, Amy Landers and Dan Landers, as Co-Guardians of the person and estate of Makayla Jean Parker Landers, demand judgment in their favor and against Vermont

Permanency Initiative, Inc. d/b/a VPI, VPI South, VPI Bennington, the Vermont School for Girls, the New England School for Girls, and the Bennington School, together with an award for full, just and adequate compensation, compensatory damages, treble damages, punitive damages, attorneys' fees, costs and such other relief as is just and appropriate.

**AMY LANDERS AND DAN LANDERS, AS CO-GUARDIANS OF THE PERSON AND ESTATE OF MAKAYLA JEAN PARKER LANDERS, DEMAND TRIAL BY JURY.**

**AMY LANDERS AND DAN LANDERS, AS CO-GUARDIANS OF THE PERSON AND ESTATE OF MAKAYLA JEAN PARKER LANDERS, SEEK THE IMPOSITION OF PUNITIVE DAMAGES.**

Dated: March 9, 2021

AMY LANDERS and DAN LANDERS,<br>
Co-Guardians of the Person and Estate of<br>
MAKAYLA JEAN PARKER LANDERS<br>
<br>
By: /s/ Michael F. Hanley<br>
Michael F. Hanley<br>
Plante & Hanley, P.C.<br>
82 Fogg Farm Road<br>
Post Office Box 708<br>
White River Junction, VT 05001-0708<br>
(802) 295 - 3151 Ext. 102 (Telephone)<br>
(802) 295 - 5281 (Facsimile)<br>
mfhanley@plantehanley.com